UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
Mildred TERCEIRA,                                               :
                                                                :
                Plaintiff,                     :     **MEMORANDUM AND ORDER**
                                                                :
                -against-                     :     03-CV-4209 (DLI)(ETB)
                                                                :
Jo Anne B. BARNHART,                                            :
Commissioner of Social Security,                                :
                                                                :
                Defendant.                     :
----------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Mildred Terceira brings this action for review of the decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits. The parties have filed cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons discussed below, the Commissioner's decision is affirmed.

**Background and Standard of Review**

Familiarity with the facts of this case is presumed. Plaintiff's extensive medical history will only be recounted here to the extent relevant to the court's opinion below. A district court reviewing the Commissioner's determination must affirm where the determination is supported by substantial evidence. *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).

Plaintiff's disability insurance expired on June 30, 1998. Thus, in order to be entitled to disability insurance benefits, plaintiff was required to establish that she was disabled prior to June

30, 1998. 42 U.S.C. § (a)(1)(A), (c)(1); *Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) Medical opinions and other evidence after June 30, 1998 is relevant to the extent it sheds light on plaintiff's pre-June 30, 1998 condition. *Vitale, supra*.

**Five-Step Process**

In determining whether plaintiff was disabled on or before the date of last insurance, an Administrative Law Judge ("ALJ") must make findings of fact pursuant to a five-step process.

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a 'substantial gainful activity.' [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a 'severe impairment,' defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.' §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d),416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called 'vocational factors' (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920 (f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124, 157 L.Ed. 2d 333 S.Ct. 376 (2003) (footnotes omitted).

Plaintiff makes three arguments in favor of granting her motion. First, plaintiff argues that the ALJ erroneously concluded that the plaintiff was not disabled at the time her disability insurance expired, June 30, 1998. Second, plaintiff contends that the ALJ failed to provide an adequate basis

2

for finding that she could perform sedentary work. Finally, plaintiff argues that the ALJ's finding that her testimony was not credible was unsupported by the record. The defendant argues that the ALJ appropriately concluded that plaintiff was not disabled and correctly evaluated plaintiff's residual functioning capacity to perform sedentary work. For the reasons that follow the court finds plaintiff's contentions without merit.

**Plaintiff's Disability**

The ALJ concluded that the plaintiff met steps one, two and four and failed to demonstrate a *per se* disability as required in step three. Plaintiff challenges the ALJ's determination at step three that she has failed to demonstrate an impairment or combination of impairments sufficient to meet or equal in medical severity those set forth in Appendix 1, Subpart P of 20 C.F.R. § 404 (the "Appendix"). Plaintiff's brief proceeds to list her medical impairments and claims that each is sufficiently debilitating to warrant a finding of disability. Alternatively, plaintiff claims that her impairments, when taken together, warrant a finding of disability. *See Dixon v. Shalala*, 54 F.3d 1019 (2d Cir. 1995) (holding that the combined effect of plaintiff's impairments must be considered in determining disability). Plaintiff cites virtually to the entire record.

Plaintiff argues that she meets or has impairments equivalent to those listed under Sections 4.11 and 4.12 of the Appendix. Section 4.11 of the Appendix lists chronic venous insufficiency of a lower extremity as a disability *per se* when it is coupled "[w]ith incompetency or obstruction of the deep venous system and one of the following: A. Extensive brawny edema; Or B. Superficial varicosities, stasis dermatitis, and recurrent or persistent ulceration which has not healed following at least 3 months of prescribed medical or surgical therapy." Section 4.12 of the Appendix lists peripheral arterial disease as *per se* disabling when it is coupled with

3

> A. Intermittent claudication with failure to visualize (on arteriogram obtained independent of Social Security disability evaluation) the common femoral or deep femoral artery in one extremity; Or B. Intermittent claudication with marked impairment of peripheral arterial circulation as determined by Doppler studies showing: 1. Resting ankle/brachial systolic blood pressure ratio of less than 0.50; or 2. Decrease in systolic blood pressure at the ankle on exercise (see 4.00E4) of 50 percent or more of pre-exercise level at the ankle, and requiring 10 minutes or more to return to pre-exercise level.

Plaintiff alleges, and the record reflects, that she was treated for both chronic venous insufficiency and peripheral arterial disease during the relevant period. However, plaintiff does not explain how these conditions were coupled with the necessary complications to render them *per se* disabling. Plaintiff argues instead that "[t]here is no indication that the ALJ ever evaluated or considered these impairments...."

The ALJ specifically concluded that none of these impairments or combination of impairments is listed in or medically equal to those set forth in the Appendix. A.R. at 17.[1] Given that plaintiff bears the burden of demonstrating medical equivalence, "the ALJ cannot be faulted for failing to provide a detailed explanation comparing plaintiff's disability to the listed impairments." *Murphy v. Sect'y of Health and Human Svs.*, 872 F. Supp. 1153, 1157 (E.D.N.Y. 1994). The ALJ was entitled to conclude that plaintiff had failed to meet her burden due to, *inter alia*, plaintiff's failure to present any evidence of disability for a period of over five years.

Moreover, none of the evidence cited by plaintiff indicates that she was disabled on or before her date of last insurance. On page 11 of her brief, plaintiff cites to 24 pages of the Administrative Record which plaintiff characterizes as the "voluminous documented medical evidence" of her disability. In fact, the 24 pages cited are various notes and letters of plaintiff's physicians that were

---

[1] References to "A.R." are to the Administrative Record filed with this court on December 30, 2003.

prepared either in or before June of 1993 or in or after March of 1999. One of the more telling notes which plaintiff cites indicates that plaintiff was seen three times by Dr. Nath in 1993 and then not again until 1999. A.R. at 369. Plaintiff offers no explanation for this significant gap.

**Residual Functional Capacity**

Plaintiff claims that the ALJ failed to evaluate the combined impact of the impairments on plaintiff's ability to work, regardless of whether each impairment, taken individually, was sufficiently severe to support a finding of disability. The Decision notes that, notwithstanding her disabilities, plaintiff "nevertheless retained the ability to lift, carry, push and pull ten pounds occasionally and could sit at least six hours and stand/walk at least two hours in an eight-hour workday." A.R. at 17. On this basis, the ALJ concluded that the plaintiff "had the residual functional capacity to perform sedentary work on and prior to June 30, 1998." A.R. at 17. In support of this conclusion, the ALJ cites to Exhibits 1F, 11F, 12F and 16F contained within the Administrative Record.

Exhibit 1F is fifteen pages long. Eight of the pages are the completely illegible notes of Dr. Tomasso.[2] A.R. at 160-174. The remainder are printouts and letters to Dr. Tomasso, along with one page of typewritten notes dated June 5, 1998. One of the letters is dated December 23, 1998 - nearly six months after the date of last insurance. A.R. at 170. The December 1998 letter details an examination of plaintiff's lumbosacral spine. The physician's impression diagnoses a "minimal intervertebral disc space narrowing ... at the L5-S1" and states that "[i]f clinical symptoms persist, further evaluation with MRI can be performed." The letter does not appear to diagnose a serious condition and does not provide any retrospective analysis that would shed light on plaintiff's

---

[2] Plaintiff does not cite these notes in support in any of her arguments. Since the notes are illegible, the court will not consider them in determining whether the Commissioner's opinion is supported by substantial evidence.

condition during the relevant period. Exhibit 1F also contains a June 5, 1998 report of an abdominal ultrasound. A.R. at 171. With the exception of an atrophic right kidney, demonstrating cortical disease, the ultrasound appears normal. Finally, Exhibit 1F includes a report of a bilateral mammography which was "unremarkable." A.R. at 174.

Exhibits 11F and 12F contain June 10, 1993 and October 14, 1993 letters from Dr. Kaufman to Dr. Kelly assessing plaintiff's non-functioning right kidney. As observed by the ALJ, both letters state that "the patient was noted to be quite comfortable" and that "[t]he heart was regular in rate and rhythm with no murmur, gallop or rub appreciated." A.R. at 254 and 248. The October 14 letter describes plaintiff's kidney function as "stable." A.R. at 249. Neither letter indicates that plaintiff's functional capacity has been reduced in any way.

Exhibit 16F is 36 pages long. The first page is a letter from Dr. Tomasso dated April 10, 2001 to plaintiff's counsel indicating that it would be impossible for Dr. Tomasso to give a full medical evaluation of plaintiff because he had not seen her in his office since March 22, 1999. A.R. at 376. The next 25 pages of Exhibit 16F consists of the illegible notes contained within Exhibit 1F, some additional notes (also illegible), and several typewritten examination reports which either postdate the date of last insurance or are included within the discussion of Exhibits 1F, 11F, and 12F, above. A.R. at 377-401. Exhibit 16F also includes evidence of plaintiff's condition on or before the date of last insurance as follows:

- A September 20, 1997 letter from Dr. Zema to Dr. Tomasso states that "[i]n this patient with known peripheral vascular disease, moderate hypercholesterolemia and a markedly positive family history of premature atherosclerosis, there continues to be no evidence of significant flow-limiting obstructive coronary arterial disease." A.R. at 402-03.

- A September 2, 1997 report of Dr. Zema concluded "Normal thallium perfusion scintigrams without evidence of dipyridamole-induced myocardial ischemia or

> pervious myocardial necrosis." The report also concludes that there was "[n]o production of chest discomfort during or after dipyramide administration." A.R. at 404-05.

- A June 17, 1997 letter from Dr. Zema to Dr. Tomasso notes that plaintiff "continues to do quite well with regard to functional capacity." A.R. at 407. In this letter, Dr. Zema was aware of plaintiff's "premature atherosclerosis and documented peripheral vascular disease." A.R. at 408. Dr. Zema went on to note that plaintiff "remained quite well over the past four years." A.R. at 409.

The exhibits cited by the ALJ diagnose various medical issues and generally pronounce plaintiff to be in stable, if not good, condition. In light of this evidence, the ALJ has adequately supported with substantial evidence the conclusion that plaintiff "had the residual functional capacity to perform sedentary work on and prior to June 30, 1998."

Finally, the fact that the ALJ's decision was contrary to plaintiff's testimony does not mean that the ALJ disregarded plaintiff's testimony. The ALJ was entitled to require, and plaintiff has failed to produce, objective evidence establishing plaintiff's medical impairments. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged...."). Moreover, the exhibits referenced above, which contradict plaintiff's testimony regarding her condition, provide adequate basis to support the ALJ's conclusions regarding plaintiff's credibility. *See e.g.,* A.R. at 407 (noting that plaintiff "continues to do quite well with regard to functional capacity.") and A.R. at 409 (noting that, in June of 1997 plaintiff had "remained quite well over the past four years.")

**Decision Not to Reopen Prior Applications**

Plaintiff contends that it was an error of law for the Commissioner to deny her request to

reopen her prior applications for benefits. "As a general rule, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Neither of the exceptions to this general rule are present here. *See Byam* at 180 (noting that a decision not to reopen may be reviewed where the commissioner has constructively reopened the case or where the claimant has been denied due process). This court therefore lacks jurisdiction to consider plaintiff's request to reopen her prior application.

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is affirmed. Defendant's motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) is therefore granted. Plaintiff's motion is denied and this case is dismissed.

SO ORDERED

DATED: Brooklyn, New York
September 15, 2005

_____/s/_____
DORA L. IRIZARRY
United States District Judge